**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 09-14256 |
| LELIA KENTON, | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| LELIA KENTON | ) | |
| | ) | |
| Plaintiff | ) | Adv. Case No. 10-50909 |
| | ) | |
| v. | ) | |
| | ) | |
| FAST CASH REALTY, JEFFREY | ) | |
| D. LIBERTO and LUCIAN K. | ) | |
| SZCZEPANSKI | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## <u>OPINION</u>[1]

Before the Court is Lelia Kenton's complaint seeking to void three mortgages granted to Fast Cash Realty, Jeffrey D. Liberto, and Lucian K. Szczepanski (collectively, "the Defendants").  The Court held a trial on October 6, 2010, and, based on the parties' pleadings, testimony, and their Stipulation of Facts, the Court will (i) rescind and void the mortgages and (ii) grant the Defendants an equitable lien on Ms. Kenton's land in an amount equal to the benefit conferred upon the Debtor by the Defendants.

---

[1] Pursuant to Federal Rule of Bankruptcy Procedure 7052, this Opinion constitutes findings of fact and conclusions of law.

1

## I.    <u>INTRODUCTION</u>

Lelia Kenton ("Ms. Kenton" or the "Debtor") owns 46 acres of land in Harrington, Delaware, secured by a first lien held by Everhome Mortgage.  Ms. Kenton, aged 70 and living on a fixed income, fell behind on her payments to Everhome in late 2006. Needing cash immediately in order to stave off foreclosure, she called defendant Fast Cash Realty ("Fast Cash"), a real estate company owned and operated by defendant Jeffery D. Liberto ("Liberto").

Ms. Kenton and Fast Cash entered into an agreement of sale on February 3, 2007 (the "Sale Agreement"), whereby Ms. Kenton agreed to sell a portion of her land (the "Land") to Fast Cash in exchange for $110,000, which amount would be sufficient to satisfy her mortgage debt, arrears, and fees to Everhome.  Fast Cash paid $10,000 up front ($7,214.64 of which was paid to the law firm of Whittington & Augur to cure Ms. Kenton's mortgage arrears and to pay legal fees related thereto) and agreed to pay the balance upon closing of the sale.  This closing was scheduled to take place on or before June 30, 2007, with Fast Cash paying Ms. Kenton's obligations to Everhome pending that date.

Fast Cash and Liberto immediately set out to develop the Land for re-sale.  Liberto surveyed the Land, obtained Kent County subdivision approval for four lots, and made revisions to those subdivision plans as necessary – all at the expense of Fast

2

Cash and/or Liberto.  The sale did not close as anticipated, however, and Fast Cash and Kenton signed two extensions to the Sale Agreement, extending the final settlement date to December 30, 2009.  Upon signing this second extension, on May 13, 2008, Ms. Kenton also signed three mortgages and bonds transferring interests in the Land.  Two of these mortgages were in favor of Szczepanski, securing debts in the amounts of $82,000 and $90,000, and a third mortgage was in favor of Liberto in the amount of $100,000.

Testifying about these mortgages, Ms. Kenton recounted that Liberto had called her on the phone that day and insisted that she needed to sign some documents immediately.  When she told him she was sick in bed, he nevertheless came to her house and drove her to a law office to sign the extension.  While there, he had her sign the three mortgages and bonds secured by three of the four subdivided parcels of the Land.  She testified that she did not read those mortgage documents and that she did not understand that she was transferring mortgage interests in her land.

It is undisputed that Ms. Kenton did not receive any of the money secured by the three mortgages.  Liberto testified that the amounts of money listed in the mortgage documents had nothing to do with the value of the plots of the Land; instead, the Szczepanski mortgages were intended to secure debts Liberto owed to Szczepanksi, and the Liberto mortgage was to protect his

3

equitable interest in the Land.

Following these extensions, Fast Cash continued to pay Ms. Kenton's mortgage obligations to Everhome pending a final settlement.  On December 1, 2009, a month before this last Sale Agreement extension was set to expire, Ms. Kenton filed a petition for relief pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

Before this Court now is Ms. Kenton's complaint seeking to void the three mortgages she signed on May 13, 2008, as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B).

## II.  **Jurisdiction and Venue**

This Court has jurisdiction to hear this matter under 28 U.S.C. §§ 1334 and 157, as this is a core proceeding, and venue is appropriate under 28 U.S.C. § 1409.

## III.  **DISCUSSION**

Section 548(a)(1)(B) of the Bankruptcy Code permits a debtor to avoid any transfer "of an interest of the debtor in property . . . that was made . . . on or within 2 years before the date of the filing of the petition" if the debtor "(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred."  11 U.S.C. § 548(a)(1)(B).

Here, the mortgages represented a transfer of an interest in

4

Ms. Kenton's property, and it is undisputed that Ms. Kenton was insolvent at the time of the transfer.  The question is whether she received reasonably equivalent value for the mortgages. Defendants admit that Ms. Kenton did not receive any of the amounts of money specified in the bonds and mortgages. Nonetheless, they contend that Ms. Kenton received value for the mortgages in the form of the expenses and labor put into developing the Land for re-sale.

These benefits to Ms. Kenton are not insignificant.  The parties estimated that Liberto and Fast Cash had spent nearly $65,000 in mortgage payments to Everhome and development expenses.  But these benefits represent obligations Liberto and Fast Cash undertook in the Sale Agreement.  Even if Ms. Kenton had never signed the three mortgages, Fast Cash and Liberto would still have been contractually required to pay the interim mortgage payments to Everhome and to pay for any preparations to re-sell the Land.  Ms. Kenton, therefore, received no value for transferring the interests in her Land to Szczepanski and Liberto.  Accordingly, the Court will grant Ms. Kenton's motion to void and rescind the three mortgages.

Nonetheless, Fast Cash is entitled to an equitable lien on the Land for the money it has spent paying Ms. Kenton's mortgage obligations to Everhome and improving the value of the Land, in order to prevent a windfall to Ms. Kenton.  Fast Cash paid

5

mortgage payments on behalf of Ms. Kenton to Everhome totaling
$39,446.03, as well as additional money subdividing the Land.[2]
Accordingly, the Court will grant Fast Cash an equitable lien in
the Land for an amount reflecting the benefits conferred upon Ms.
Kenton, with interest payable at a rate of 6% per annum.  The
specific amount of this lien shall be determined consensually by
the parties, or by the Court if no such consensus can be
reached.[3]

---

[2]Upon confirmation of Ms. Kenton's Plan of Reorganization, the Sale Agreement will be
rejected, with such rejection deemed to have occurred immediately prior to her petition date.  11
U.S.C. § 365(g).  Under § 365(j), which concerns the rejection of executory contracts for the sale
of real property, Fast Cash will be entitled to a further lien for the $10,000 it has already paid
towards the purchase price, which lien will be junior to the Everhome mortgage.  See  In re
Levitt & Sons, LLC, 2008 Bankr. LEXIS 2187, *14-15 (Bankr. S.D. Fla. July 16, 2008).
Consequently, the equitable lien granted here does not cover this $10,000 lien.  11 U.S.C. §
365(j).

[3]Ms. Kenton's First Amended Plan of Reorganization contemplates the prompt sale of the
Land.  The proceeds of such sale will be used first to satisfy the liens against the Land, including
Fast Cash's equitable lien.  If the proposed First Amended Plan of Reorganization substantially
changes, such that the Land will no longer be sold promptly, Fast Cash may return to this Court
for alternative or supplemental equitable relief.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the motion to void and rescind the three mortgages, and will grant Fast Cash Realty an equitable lien upon the Land in an amount of not less than $39,446.03.  An appropriate Order follows.

BY THE COURT:

Dated:    Wilmington, Delaware
          November 17, 2010      _____
                                 Brendan Linehan Shannon
                                 United States Bankruptcy Judge